VALENTÍN POLANCO DE JESÚS and EMILIO REYNES, Plaintiffs, Appellees and Appellants, v. SANTIAGO RUIZ LÓPEZ and THE MUNICIPALITY OF CIALES, Defendants, and Appellant-Appellee, the former.

No. 7653. Argued December 15, 1938.—Decided December 23, 1939.

760

*Juan B. Soto* and *Enrique Igaravídez,* for appellant-appellee; *V. Polanco de Jesús, pro se,* and *Luis Mercader,* for appellees-appellants.

Mr. Justice Hutchison delivered the opinion of the Court.

The district court overruled a demurrer interposed by the defendant Ruiz López for want of facts sufficient to constitute a first cause of action. Later, during the course of the trial, the court overruled a motion to strike the same cause of action. Ruiz López relied and still relies on Sections 1252, 1253 and 1254 of the Civil Code (1930 ed.). The Municipality of Ciales although duly summoned did not appear in the action.

The first cause of action as set forth in an amended complaint was in substance this:

Plaintiffs were the owners of a house and lot described in the complaint and recorded in the registry of property at page 97, volume 57 of Ciales. Plaintiffs and previous owners had been in the quiet, continuous and undisturbed possession both actual and civil of the property as sole owners thereof for more than forty years. Ruiz López, on February 28, 1928, had purchased from Successors of F. Pintueles & Co. a house and lot 9.90 meters in width and 16.04 meters in depth, fronting west on Palmer, formerly Victoria street, bounded on the east in part by the property of plaintiffs and in part by other property of Successors of F. Pintueles & Co. The house covered the whole lot both frontage and depth and this fact was known to both defendants since the municipality had conveyed the land to Ruiz López and they had by agreement measured it. In 1930, Ruiz López, without giving any notice to Fernando José Fernández Vega, at that time the incapacitated owner of the property subsequently acquired by plaintiffs, inexactly informed the Municipality of Ciales that he had remeasured his lot and had found that it measured twenty-four meters in depth instead of 16.04 meters. In this manner he had obtained from the municipality and had recorded in the registry of property a deed of conveyance executed April 25, 1930, wherein the lot was described as being twenty-four meters in depth. The eight additional meters described in the complaint as a rectangular strip eleven feet in width, were a part of the property owned by plaintiffs. Since 1930, when Ruiz López obtained a deed from the municipality and recorded the same both before and after the date of that deed and to the time of filing the complaint, he knew that the Municipality of Ciales had never been the owner of the strip eleven feet wide by eight meters deep described in the complaint and had nothing to do with the said strip. On the contrary both defendants had known and knew that the strip had belonged exclusively to the predecessors in interest of plaintiffs who were and had been for more than forty years in public, peaceful and uninterrupted possession thereof as sole owners; and notwithstanding such knowledge they had executed and recorded the said deed of conveyance on the basis of the said inxactitude. Ruiz López relying on such deed had entered upon the said strip of land, the property of plaintiffs, had destroyed the flowers and shrubs planted and cultivated for more than sixteen years by plaintiffs, had destroyed a fence made of wood and woven wire placed on the south boundary line of plaintiffs' property sixteen years before and had recently destroyed a wall built by plaintiffs on said strip close to the rear wall

or back of the drug store belonging to Ruiz López, who was still threatening to continue in the possession and control of the said strip and alleging both orally and in writing that he was the owner thereof and had tolerated the planting of shrubs and flowers by plaintiffs. The prayer was for a judgment to the effect that the eight meter strip was included in the lot described in the complaint as belonging to plaintiffs; that the deed of April 25, 1930 and the record thereof in the registry of property were inoperative, void and non-existent and did not affect plaintiff's title and that plaintiffs should be protected and left in the quiet undisturbed possession of their property as the sole owners thereof.

This was and is, we think, a suit to quiet title authorized by Section 282 of the Code of Civil Procedure.

Plaintiffs did not seek to invalidate or annul the deed of April 25, 1930, as a voidable instrument. Their purpose was to establish the absolute nullity of that conveyance and thereby remove a cloud from their title. Sections 1252 *et seq.* of the Civil Code have nothing to do with the case.

What we have said disposes of the first five assignments in the brief for defendant appellant.

Plaintiffs offered in evidence certified copies of entries in the registry of property concerning the house and the lot described in the complaint as the property of plaintiffs. In reply to an inquiry by counsel for defendant as to the purpose for which this evidence was offered, counsel for plaintiffs stated that it was offered for the purpose of showing dominion title in plaintiffs and the history of the property over a period of more than fifty years. Defendant objected on the ground that the deeds themselves should be produced in order that the validity of plaintiffs' title might be determined. The judge admitted the document for the sole purpose of showing that the property had been recorded in the registry of property in the name of plaintiffs; not for the purpose of showing that the plaintiffs were the owners of the property, but for the purpose of showing that it had been recorded in the registry as the property of plaintiffs. The document showed that plaintiffs and their predecessors in interest had

been the record owners of the property since 1881. It was admissible for that purpose.

Later, the court admitted a certified copy of the record entries concerning defendant's title. When this document was offered in evidence, defendant objected because it appeared from the document that defendant had purchased from Pintueles the house only, while plaintiffs had alleged a conveyance of both the house and the lot. Counsel for plaintiffs stated that Pintueles had sold only the house and that the averment in the complaint as to a conveyance of both house and lot was a mistake. The admission of this document is assigned as error by defendant-appellant in his brief. He is content to rely on the reasons already assigned in support of his contention that the court erred in admitting the certified copy of the record entry concerning plaintiffs' title. Any discussion of the question so sought to be raised would seem to be superfluous.

Joaquín Torres Noriega, managing partner of F. Pintueles & Co., after testifying that since 1907 he had known the property described in the complaint as belonging to plaintiffs, was asked who had been in possession thereof. Defendant objected on the ground that this appeared from the registrar's certificate. Counsel for plaintiffs said that the question was whether witness knew who had been in possession of the property. Defendant then objected on the ground that the action was not a revendicatory action but an action to annul a deed and to establish the non-existence of a servitude. Counsel for plaintiffs quoted from the prayer. If we are correct in the conclusion already reached as to the nature of the action, the objection was properly overruled.

When Torres Noriega was asked whether he knew the width of plaintiffs' property in front, the defense said that there were documents to show that. The witness did not answer the question but was asked to name the owner of the adjoining property on the South. Defendant stated that the boundaries appeared from the documents already presented.

The judge said that although documentary evidence had been presented, the witness might testify to the boundaries if he knew them; that the object was to corroborate the documenary evidence; that in the event of confusion or discrepancy, the court would determine which should control; that the testimony was for the purpose of corroboration only; that the inquiry along these lines should be limited as far as possible. Defendant took no exception to this ruling. In answer to further questions, the witness then stated that the property was bounded on the South by Succrs. of F. Pintueles & Co., on the West by the Municipality of Ciales and by Ruiz López, and on the East by Pintueles. We find no error in the ruling of the court. The only alleged contradiction complained of in the brief for appellant was insignificant, more apparent than real, and fully explained by other testimony and documentary evidence. The error, if any, was harmless.

In the rectification deed of April 25, 1930, the parties stated before the notary: that by another deed of January 23, 1930, Alvaro Corrada, as the Mayor of Ciales, had sold to Ruiz López a lot on Palmer Street with a frontage of 9.90 meters and a depth of 16.04 meters, bounded on the South by a lot, the property of the municipality, occupied by a house, the property of Succrs. of F. Pintueles & Co. and on the East by another lot belonging to the municipality, the usufruct of which had been granted to Succrs. of F. Pintueles & Co.; that Ruiz had built upon his lot a masonry house which had formerly measured 9.90 meters in front by 10.30 meters in depth but at the time of the rectification measured 9.90 meters in front and 16.04 meters in depth, that is to say, with the same dimensions as those of the lot upon which it was built.

Corrada also stated that the lot just described having been measured, the result was an area of 24.04 meters in depth by 9.90 in front or a depth of 8 meters more than the number of meters calculated at the time of the previous sale.

While Corrada was on the stand as a witness for plaintiffs he was asked "who was back of the drug store wall on the East". He answered that it was bounded by Polanco and Pintueles. Defendant moved to strike this answer because it was contrary to a document that had been introduced in evidence.

The judge said that the only inquiry permissible would be, not as to the exact dimension, but as to whether there was a courtyard, as to whether there was a courtyard in the rear of Polanco's house; that the dimensions could not be corrected by oral testimony. Both attorneys then argued the question but the nature of the argument does not appear from the record. After hearing this argument the judge said that: the only question he would permit was as to whether at the time of the instrument, the witness had taken any measurements or whether he had acted on information, but not as to whether it (the statement in the deed) was true; he would not permit the witness to say that the statement in the deed executed by him, as mayor, in favor of defendant, Ruiz López, was not true; the court would permit questions as to whether, at the time of the rectification instrument, the witness acted by virtue of any measurement which he had made or merely upon information to the effect that the land previously conveyed did not include the whole of the lot. Counsel for plaintiffs said that the question as to the second conveyance would arise later. No exception was taken to the ruling of the court. It may have been more responsive to defendant's argument than it was to the motion to strike but appellant does not complain of the failure, if any, to decide the exact question raised by the motion. In any event, defendant did not insist upon a direct ruling on his motion to strike. As conclusively shown by other evidence, Succrs. of Pintueles & Co. were among Polanco's predecessors in interest and the discrepancy between the description contained in the deed and the mayor's testimony as to the

Eastern boundary of the Ruiz lot was not a matter of vital importance.

Later the witness was asked whether, at the time of the second instrument, he had done anything in person or whether he had acted on information received from another. Defendant objected to any question as to the motives which prompted the action taken by witness; when anything is incorporated in a public document, said counsel for defendant, it is presumed that previous facts have been determined by the parties. The judge said that the question had been decided. The court would permit a question as to whether the witness, when he executed the second instrument, had consulted any official document or had taken any measurement on the ground. Counsel for defendant added: "Provided it is not contrary to what appears from the deed", and took an exception. The judge then asked the witness whether he had consulted any official document or had taken any measurement on the ground when he executed the second deed. The witness answered in the negative. Asked whether he had consulted anything, witness answered that he had executed the deed only upon personal information received from Ruiz, who had appeared with his attorney.

Section 25 of the Law of Evidence, now Section 387 of the Code of Civil Procedure (1933 ed.) provides that:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and, therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreements other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings.

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section thirty-four, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term 'agreement' includes deeds and wills, as well as contracts between parties."

Plaintiffs were not parties to the rectification deed of April 25, 1930, nor were they the representatives or successors in interest of any of the parties to that deed. This, without more, is enough to bring the instant case within a well recognized exception to the parol evidence rule, unless the fact that the defendant, Ruiz López, and the defendant municipality, represented by Corrada, as mayor, operates to prevent that result. See 2 Jones on Evidence, Section 449, p. 858, and 5 Wigmore (2d ed.) Section 2446, p. 342.

Corrada's testimony also tended, we think, to explain an extrinsic ambiguity by disclosure of additional circumstances not mentioned in the deed thus bringing to light all instead of a part only of the circumstances in which the agreement was made.

In any event, the present action, as we have already shown, was brought to establish the absolute nullity of the deed.

In any event also, Corrada had not stated before the notary that he had consulted any official document or that he had himself surveyed the lot or that he had been an eye-witness to the survey or to the result thereof or that he had not acted on information and belief. The mayor's testimony did not vary, modify or contradict his statement as made before the notary.

What we have said covers the five subdivisions of the ninth assignment.

The seventh, eleventh, twelfth and thirteenth assignments are in substance that the court erred—

In weighing the evidence; in finding that plaintiffs' title to the strip in controversy was superior to that of defendant-appellant; in holding that the municipality could not sell the lot described in the second deed of conveyance executed in favor of defendant-appellant; in finding that plaintiffs were and had been during the last years in possession of the strip in controversy.

For reasons already indicated in discussing the sufficiency of the facts set forth in the complaint, we cannot assume with

defendant-appellant that a finding as to fraud and deceit in obtaining from the municipality the second deed of conveyance relied on by the defendant, Ruiz, was necessary in order to sustain a judgment for plaintiffs. Plaintiffs and their predecessors in interest had been in possession of the strip in controversy, as the record owners thereof, for approximately half a century prior to the execution of the second deed. Conceding, as did the district judge, that they were not in fact the owners in fee, but mere usufructuaries, yet the municipality, as the owner of the naked legal title, was powerless to sell the property to any one other than the usufructuary without the formality of a public auction. See Sections 71, 72 and 73 of the Municipal Law (Laws of 1928, p. 392.) Hence, the second conveyance was an absolute nullity. As far as the first cause of action was concerned, we find no error in the weighing of the evidence.

The sixth, eighth, tenth and fourteenth assignments are that the district court erred: In rendering judgment for plaintiffs in their first cause of action; In not awarding costs to defendant-appellant; In finding that plaintiffs were the owners of the lot first described in their complaint; In dismissing defendant's cross-complaint.

The sixth assignment is submitted as a corollary of the other assignments already discussed. The tenth assignment is not discussed in the brief for defendant-appellant. The eighth and fourteenth are equally without merit.

 The judgment contained pronouncements to the effect that—

Plaintiffs had no right to demand the closing of a "door-window" in defendant's rear wall and if plaintiffs should build on their lot they would be bound by the provisions of Section 521 of the Civil Code; the defendant Ruiz was not liable in damages; each party was to pay its costs.

Plaintiffs appeal from this part of the judgment.

Vicente Martínez in 1880 purchased the house subsequently acquired by defendant Ruiz. It was described as

having a cistern and a corral, and as occupying a lot nine varas in front by twelve in depth. When Ruiz purchased the house in February 1928, it was described as having a cistern and a corral (although it was said that the cistern no longer existed) and as having been built on a lot nine varas in front by twelve in depth, which lot, by agreement with the municipality, was in fact at the time of the conveyance 9.90 meters in front and 16.04 meters in depth. The house itself was said to be 9.90 meters by 10.30 meters in depth.

Ruiz removed a wooden shed-room or addition in the rear of the masonry house described in the deed. He then built near or contiguous to the Eastern boundary line of the lot a concrete wall with two openings, one of which is described by the district judge at one time as a window and at others as a "door-window". This is the opening which plaintiffs sought to have closed. The wooden structure in the rear of the masonry house had similar openings. The district judge found that the openings in the concrete wall were in the same place where the openings in the wooden structure had been. But for this finding, our own conclusion might well be that one of the openings in the rear wall of the wooden structure gave access to a corral (a part of the Ruiz lot) and the other, although apparently not used as a doorway, received light and air from the same corral—not directly from the adjoining property on the east as does the substituted window or "door-window" in the concrete wall. Such a conclusion would not only find ample support in the testimony but would be much more in line with the uniform trend of the documentary evidence. An outstanding feature of this evidence is a statement made by Ruiz before the notary who drew the instrument of January 23, 1929. It follows:

". . . That he owns, and appears in the registry as owner of, the following real estate:

"(A) *Urban:* House on Palmer Street in Ciales, made of cement and zinc, wh'ch used to measure nine meters and ninety centimeters in front by ten meters thirty centimeters in depth, but actually, because

the house was extended over its former backyard, it measures nine meters ninety centimeters in front by sixteen meters four centimeters in depth, that is, the house covers the whole lot."

In the view we take of the case, however, the question as to whether any error in the finding of the district judge was so manifest as to require a reversal need not now be decided.

In *Rabell* v. *Rodríguez,* 24 P.R.R. 526, and *Rodríguez* v. *Colón,* 34 P.R.R. 74, the doors opened on defendant's own property. Neither of these cases is authority for the proposition that the courts are powerless to compel the closing of a doorway which opens directly on the property of an adjoining land owner.

In the instant case, the sill of the window or door-window was a meter or a meter and a half above the level of the ground. It could not have been used as a doorway without a ladder or an outer stairway resting upon plaintiffs' property. It could not have been so used without entering upon and passing over a part of plaintiffs' property. A right of way is a discontinuous servitude which cannot be acquired by prescription. Even if Ruiz, without protest or objection on the part of plaintiffs or their predecessors in interest, had built a concrete stairway and a concrete or macadamized walk or driveway through or across the property of plaintiffs, yet in accordance with the majority opinion of this Court in *Martínez Rodríguez* v. *Central Cambalache,* 48 P.R.R. 208, affirmed in *Central Cambalache* v. *Martínez Rodríguez,* 82 Fed. (2d) 37, a right of way could not have been acquired by prescription. See also a luminous article by Judge Otto Schoenrich entitled "Acquisition of Rights of Way by Prescription" in the February 1938 issue of the Tulane Law Review, number 2 of volume XII, 226.

In any event, the district judge did not find that the window or "door-window" in controversy was a door rather than a window, or that it had ever been used as a means

of egress and ingress. We find in the evidence no satisfactory basis for such a conclusion.

The opening, notwithstanding its size and form, was designed and used primarily at least for the purpose of admitting light and air, not as a means of egress and ingress. It was a window, not a doorway. See *Valls* v. *Rosado,* 52 P.R.R. 317.

Continuous and apparent servitudes may be acquired by prescription. The statutory period is twenty years. Section 544 of the Civil Code. This period begins to run, in the case of positive servitudes, ''from the day on which the owner of the dominant tenement or the person who has made use of the servitude shall have begun to exert it over the servient tenement''. In the case of negative servitudes, it begins to run ''from the day on which the owner of the dominant tenement shall have, by a formal act, prohibited the owner of the servient tenement to execute the act which would be legal without the servitude.'' Section 545. Servitudes of light and view are negative and ordinarily both apparent and continuous. *Roman Catholic Church* v. *Combate Tobacco Corp.,* 42 P.R.R. 363. The only act performed by Ruiz which could be regarded as forbidding the doing of anything by plaintiffs inconsistent with the existence of a servitude was the destruction of the wall erected by plaintiffs or by one of them on their own property opposite the window in controversy. The manner in which the destruction of this wall was accomplished resulted in the damage done to the shrubbery and flowers described in the complaint. The wall was erected shortly before sunrise in the early morning of November 10, 1935. It was destroyed early in the forenoon of the same day. The complaint was filed March 19, 1936. There was no basis for any claim of servitude by prescription or otherwise. It is fair to add that defendant made no such claim in his answer but was content to deny plaintiffs' title to the property described in the complaint as belonging to

them and to assert defendant's ownership of the lot purchased from the municipality.

We have discussed the question of prescription only because the district judge based his judgment, as far as the same was adverse to plaintiffs, mainly on the theory of prescription. This view, of course, overlooks the plain provisions of Section 545, *supra*.

The district judge held that plaintiffs were not entitled to damages arising out of the destruction of the wall erected by them on their own property because they had no right to close defendant's window without first obtaining a judicial determination of defendant's right to a servitude. The answer to this, of course, is that plaintiffs did not close defendant's window but merely built a wall on their own property which they had a perfect right to do even though the result was to prevent defendant's further use of plaintiffs' property as a source of light and air which he had previously received through the tolerance of plaintiffs but without the semblance of any right to continue in the enjoyment of that privilege.

Plaintiffs alleged as a third cause of action that rain water from defendant's roof fell upon plaintiffs' property washing away the soil and causing damage to the flower garden; that plaintiffs had requested defendant so to construct his room that the water therefrom would fall upon his own property or upon the public thoroughfare which defendant had refused to do. The prayer was that the defendant be required within a reasonable time after judgment so to construct his roof that the water therefrom would fall upon his own property or upon the public thoroughfare. The district judge said that the evidence in support of this cause of action was so weak that he did not feel justified in rendering a judgment for plaintiffs. He also said that even if it should be admitted that a few drops of water from the roof fall upon the boundary line between the two lots very close to the wall, there was no basis for an inference that

plaintiff, Polanco, had suffered any damage. Polanco, said the judge, had testified to the cultivation of beautiful and costly flowers over a long period of time alongside the wall which showed that the water had been rather beneficial.

It may be conceded that the damage caused by the rain water which fell from defendant's roof was not great. Plaintiffs, however, would have been entitled at least to nominal damages if demanded; but there was no prayer for the recovery of any damages caused by the rain water. Nor did plaintiffs' right to the relief demanded hinge on the question of damages or the amount thereof. The evidence was more than sufficient to establish the fact that rain water from defendant's roof fell upon plaintiffs' property. Section 593 of the Civil Code reads as follows:

"The owner of a building is obliged to construct his roofs or coverings in such manner that rain-water may fall on his own land or on the street or any public place, and not on the land of his neighbor. Even if it fall on his own land, the owner is obliged to collect it in such manner as will not injure the adjoining tenement."

Plaintiffs were entitled, we think, to a judgment in their favor on their second, third and fourth causes of action, as well as on the first and such judgment should have included an award of costs.

So much of the judgment appealed from as was adverse to plaintiffs must be reversed and in lieu thereof, the judgment of this Court will be entered for plaintiffs. In all other respects, the judgment appealed from will be affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.

Mr. Justice Wolf agrees with the result.